UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CENTRAL BOAT RENTALS, INC. | CIVIL ACTION |
| VERSUS | NO. 23-2861 |
| HARBOR DREDGING, INC., ET AL. | SECTION: "O" (3) |

## ORDER AND REASONS

Before the Court is a Motion for Leave to Amend Complaint filed by Plaintiff, Central Boat Rentals, Inc. ("Central Boat") (Doc. 103). Third-Party Defendant, Stolt Tankers USA, Inc. ("Stolt") filed an opposition (Doc. 106). Central Boat filed a reply (Doc. 108), and Stolt filed a surreply (Doc. 113). The Court heard oral argument on August 6, 2024. For the following reasons, the motion is **DENIED**.

**I.  Background**

Harbor Dredging, Inc. ("Harbor Dredging") contracted with Central Boat to charter its barges for a Texas dredging project.[1] Harbor Dredging was using the barges to complete a project for Stolt. Doc.[2] After its invoices went unpaid, Central Boat sued Harbor Dredging.[3] Harbor Dredging then filed a third-party complaint against Stolt. Under Fed. R. Civ. P. 14(c), an admiralty-specific rule, the third-party

---

[1] Doc. 1, ¶ 6; Doc. 23-8 at 1-2.
[2] Doc. 20-1 at 1.
[3] Doc. 1, ¶ 29.  Central Boat also named as a defendant Port Bolivar Marine Service, Inc., but those claims are not at issue in the present motion.

1

complaint demanded judgment for both Harbor Dredging and Central Boat and against Stolt.[4]

As the litigation progressed, Harbor Dredging's counsel withdrew and it failed to enroll new counsel.[5] The District Court granted Harbor Dredging until June 26, 2024, to enroll new counsel, cautioning that failure to comply with the order could result in a default judgment because corporate entities must be represented by a licensed attorney to appear in federal court[6] To date, Harbor Dredging has not enrolled new counsel.

Central Boat seeks leave to file an amended complaint that names as defendants both Harbor Dredging and Stolt. The basis for the proposed amendment is an oblique action under La. Civ. Code art. 2044. That article provides:

> If an obligor causes or increases his insolvency by failing to exercise a right, the obligee may exercise it himself, unless the right is strictly personal to the obligor.
>
> For that purpose, the obligee must join in the suit his obligor and the third person against whom that right is asserted.

According to Central Boat, Harbor Dredging's failure to retain counsel to prosecute its claims against Stolt caused or increased Harbor Dredging's insolvency.[7] Thus, Central Boat contends, it is an aggrieved obligee entitled to bring an oblique action against both Harbor Dredging and Stolt.[8]

---

[4] Doc. 23.
[5] Doc. 100.
[6] Doc. 100.
[7] Doc. 103-3, ¶ 40.
[8] Doc. 103-3, ¶¶ 40-41.

## II.     Standard of Law

Rule 15(a) sets forth a permissive standard for amendment of a complaint. But when, "as here, a party's request to amend pleadings is beyond the scheduling order deadline, the moving party must establish good cause to extend that deadline. "Only after the Court finds that the good cause standard is satisfied under Rule 16(b) will the 'more permissive' Rule 15(a) standard apply." *Jackson v. Gray*, 345 F.R.D. 597, 607 (E.D. La. 2024) (quoting *Butler v. Taser Intern., Inc.*, 535 F. App'x 371, 372 (5th Cir. 2013)). The deadline to amend pleadings, whether through consent of counsel or leave of court, expired on November 13, 2023.[9]

The Rule 16(b) "good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (citation and internal quotation marks omitted). This inquiry focuses on the diligence of the party seeking to modify the scheduling order, and it is "squarely within [the district court's] sound discretion" to deny leave to amend under Rule 16(b)(4) if it finds that the plaintiff has not satisfied the first good cause factor by "account[ing] for its delay." *Jackson v. Gray*, c, 606–07 (E.D. La. 2024). "In making its determination of good cause, the Court considers four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id*. When, as here, a request for

---

[9] Doc. 19.

amendment requires a modification of the Scheduling Order, any order must come from the District Court. Because, however, Central Boat's motion fails under the Rule 15(a) standard, the undersigned need not reach Rule 16(b).

Under Fed. R. Civ. P. 15(a)(2), "The court should freely give leave when justice so requires." *Id.*

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Forman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted). Thus, although the "policy of the federal rules is to permit liberal amendment," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981), futility constitutes a "substantial reason" to deny leave to amend. *Forman*, 371 U.S. at 182.

### III. Analysis

To proceed with its proposed amendment in this maritime action, Central Boats must establish that: (1) maritime law is silent on the availability of an oblique action; (2) Louisiana law fills in that gap at this stage; and (3) Central Boats has adequately pleaded an oblique action under Louisiana law. The Court need not reach the third requirement because it concludes that Texas law applies to the proposed amendment.

4

### A. Maritime law is silent on the remedies available to an obligee when an obligor is insolvent.

There is no dispute that the claims at issue are subject to maritime law. When maritime law is silent, however, or when "the precedent in federal admiralty law is" sufficiently "thin," courts look to state law to fill in the gaps. *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 247 (5th Cir. 2016). The parties dispute whether maritime law is silent on the remedies available to Central Boat given Harbor Dredging's alleged insolvency.

Stolt maintains that Rule 14(c) of the Federal Rules of Civil Procedure governs third-party practice to the exclusion of state-law remedies. That rule provides:

(c) Admiralty or Maritime Claim.

> (1) *Scope of Impleader.* If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable--either to the plaintiff or to the third-party plaintiff--for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.
>
> (2) *Defending Against a Demand for Judgment for the Plaintiff.* The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant. In that event, the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff.

Rule 14(c) thus provides one mechanism for impleader under maritime law. But that alone does not bar alternative remedies.

True, Central Boats already availed itself of Rule 14(c) to bring certain claims against Harbor Dredging. Rule 14(c) however is not interchangeable

5

with an oblique action because it does not allow Central Boats to step into Harbor Dredging's shoes and pursue Harbor Dredging's claims against Stolt. Thus, while Rule 14(c) addresses, as a matter of maritime law, the impleader of a third-party defendant, it does not address the availability of an oblique action or similar remedy available under other states' laws. And Rule 14(c) does not purport to provide an exclusive remedy for obligees when faced with an obligor's insolvency.

One common state-law remedy associated with an obligor's insolvency is a fraudulent transfer action. The decisions cited by the parties relative to the intersection of maritime law and fraudulent transfers conclude that maritime law is silent such that state law on fraudulent transfers may fill in the gaps. *E.g., Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, 244 F. Supp. 3d 750, 760–61 (N.D. Ill. 2017) "It is well-settled that federal maritime jurisdiction may be invoked to avoid or set aside fraudulent transfers made for the purpose of circumventing a judgment entered by a court sitting in admiralty. . . . In such actions, it is unnecessary to rely on substantive admiralty law, for courts sitting in admiralty look to state law in cases where there is no applicable admiralty law on point.") (citing cases, *aff'd*, 885 F.3d 1090 (7th Cir. 2018). Given these cases and the absence of cited countervailing authority, the undersigned concludes that maritime law is silent on Central Boat's potential remedies for Harbor Dredging's insolvency or, at the very least, that "federal precedent is so thin that it is appropriate to look to state law to fill in the gaps." *See Malin*, 817 F.3d 247.

6

### B. Texas law applies to fill this gap in maritime law.

As explained above, the fraudulent transfer doctrine provides obligees with a remedy for an obligor's insolvency. Almost all states, including Texas, have codified the fraudulent transfer doctrine by enacting the Uniform Fraudulent Transfer Act. *See* Kenneth C. Kettering, *Codifying A Choice of Law Rule for Fraudulent Transfer: A Memorandum to the Uniform Law Commission*, 19 Am. Bankr. Inst. L. Rev. 319, 321 (2011). But the proposed amendment does not rely on any state's codification of the Uniform Fraudulent Transfer Act. Instead, it relies only on a somewhat analogous claim unique to Louisiana—the oblique action.[10] Central Boat's proposed amendment relies solely on the Louisiana oblique action to support its proposed claims. To the extent Texas may offer a similar vehicle, Central Boat does not rely on it. Thus, determining which state's law will fill in the gaps in maritime law requires a choice-of-law analysis.

### 1. The choice-of-law provision in the Harbor Dredging-Stolt contract applies to Central Boat's proposed amendment and requires the application of Texas law.

The U.S. Supreme Court has confirmed that choice-of-law provisions provide needed certainty and predictability in maritime contracts.

---

[10] Secondary authority indicates that "Louisiana law does not include fraudulent transfer as such, but does include a civil law analogue, the 'revocatory action.,' codified at La. Civ. Code art. 2036-2044." *See id.* That authority appears to assume that both revocatory and oblique actions are analogous to fraudulent transfer laws. Assuming, without deciding, that this is correct, the result remains the same.

> After *Wilburn Boat*, maritime actors realized that a lot would depend on which State's law governed each individual maritime dispute—a question that would be unclear in advance. See 2 Schoenbaum, Admiralty and Maritime Law § 19:9. Choice-of-law provisions soon emerged as a ready answer to that problem. See W. von Bittner, The Validity and Effect of Choice of Law Clauses in Marine Insurance Contracts, 53 Ins. Counsel J. 573, 573, 578–579 (1986). And particularly since *The Bremen* resolved the analogous forum-selection issue in 1972, most maritime actors have justifiably believed that choice-of-law provisions are presumptively enforceable as a matter of federal maritime law. See 1 Schoenbaum, Admiralty and Maritime Law § 5:19, at 427. That widespread understanding is correct . . . .

*Great Lakes Ins. SE v. Raiders Retreat Realty Co. 601* U.S. 65, 75–76 (2024). Like the maritime contracts contemplated by the Supreme Court, the Harbor Dredging-Stolt contract contains a choice-of-law provision. It states that maritime law applies and Texas law applies to the extent maritime law is unavailable. Because Central Boat seeks to stand in Harbor Dredging's shoes, it is bound by the choice-of-law provision.

Central Boat, however, maintains that Louisiana law applies to supply it with a vehicle—the oblique action—that allows Central Boat to stand in the shoes of Harbor Dredging relative to claims against Stolt. Once in those shoes, Central Boat seeks to adopt Harbor Dredging's Texas law claims. Thus, Central Boat seeks to rely on Louisiana law initially as to whether it can bring an oblique action, and then pivot to Texas law for the actual breach of contract claim borrowed from Harbor Dredging. This approach bifurcates the choice-of-law provision in the Harbor Dredging-Stolt contract from whether Central Boat may bring an oblique action.

The undersigned is unaware of any authority that would support the bifurcation. Moreover, at least in the bankruptcy context, the U.S. Supreme Court

has described fraudulent transfer actions as "quintessentially suits at common law that *more nearly resemble state law contract claims* brought by a bankrupt corporation to augment the bankruptcy estate . . . ." *Stern v. Marshall,* 131 S. Ct. 2594, 2614 (2011) (emphasis added) (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 56 (1989)). When, as here, the Louisiana oblique action seeks to assert a breach of contract claim, the logical result is that the claimant is subject to the same limits as the contracting parties. *See In re Zetta Jet USA, Inc.,* No. LA CV21-07572 JAK, 2024 WL 3198826, at *42 (C.D. Cal. Mar. 26, 2024) (citing *In re Century City Drs. Hosp., LLC*, 466 B.R. 1, 9 (Bankr. C.D. Cal. 2012)).

Finally, requiring Central Boat to proceed, if at all, under Texas law serves the goals of obtaining principles of predictability and certainty in maritime actions.

> As courts and commentators have recognized, the presumption of enforceability for choice-of-law provisions in maritime contracts facilitates maritime commerce by reducing uncertainty and lowering costs for maritime actors. Maritime commerce traverses interstate and international boundaries, so when a maritime accident or dispute occurs, time-consuming and difficult questions can arise about which law governs. Choice-of-law provisions "reduce legal uncertainty." J. Coyle, The Canons of Construction for Choice-of-Law Clauses, 92 Wash. L. Rev. 631, 633, n. 6 (2017). By identifying the governing law in advance, choice-of-law provisions allow parties to avoid later disputes—as well as ensuing litigation and its attendant costs. Cf. *Carnival Cruise*, 499 U.S., at 593–594, 111 S.Ct. 1522. Choice-of-law provisions also discourage forum shopping, further cutting the costs of litigation.
>
> Moreover, by supplying some advance assurance about the governing law, choice-of-law provisions help maritime shippers decide on the front end "what precautions to take" on their boats, *American Dredging*, 510 U.S., at 454, 114 S.Ct. 981, and enable marine insurers to better assess risk, see Brief for American Institute of Marine Underwriters et al. as *Amici Curiae* 12–13. Choice-of-law provisions therefore can lower the

9

>price and expand the availability of marine insurance. In those ways, choice-of-law provisions advance a fundamental purpose of federal maritime law: the " 'protection of maritime commerce.' " *Exxon Corp.*, 500 U.S., at 608, 111 S.Ct. 2071 (quoting *Sisson v. Ruby*, 497 U.S. 358, 367, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)).

*Great Lakes*, 601 U.S. at 72–73. Parties that choose the law of a particular state to govern a contract may not contemplate that third parties like Central Boat may rely on the laws of other states to avail themselves of the benefits of that contract. *See also Liverpool & London S.S. Prot. & Indem. Ass'n Ltd. v. QUEEN OF LEMAN MV*, 296 F.3d 350, 355 (5th Cir. 2002) (applying maritime contract choice-of-law provision to nonparty to contract and observing, "Likewise, Interforce's absence from the original contract negotiation does not prevent the choice of law provision from binding it."). In short, to the extent Central Boat wishes to step into the contractual shoes of Harbor Dredging, it can do so only through Texas law. The proposed amendment to add an oblique action claim under Louisiana law is futile.

### 2. In the alternative, even absent the Texas choice-of-law provision, maritime law requires the application of Texas law.

Even were it not for the choice-of-law provision, Central Boat's proposed amendment would remain futile because Texas law governs under maritime law's choice-of-law analysis. Absent a choice-of-law provision, determining which state's law may apply to fill in the gaps in a maritime action requires a multi-factor balancing test.

>Where application or choice of law issues are not decided by agreement of the parties or by statute, admiralty applies a general choice of law analysis derived from three Supreme Court cases, *Lauritzen v. Larsen, Romero v. Int'l Terminal Operating Co., and Hellenic Lines v. Rhoditis*.

10

> These cases mandate the resolution of choice of law by balancing eight different factors: (a) the place of the wrongful act; (b) the law of the flag; (c) the allegiance or domicile of the injured; (d) the allegiance of the defendant shipowner; (e) the place where the contract of employment was made; (f) the inaccessibility of the foreign forum; (g) the law of the forum; and (h) the shipowner's base of operations.[18] Although this conflicts analysis is primarily suited for seamen's personal injury cases, it has been adapted to many other admiralty situations.[19] A cogent criticism of the admiralty choice of law doctrine is that it emphasizes contacts and is too mechanical in nature.

§ 5:19. Choice of law and conflicts of laws, 1 Admiralty & Mar. Law § 5:19 (6th ed.) (footnotes omitted). These factors favor the application of Texas law.

Harbor Dredging (whose shoes Central Boat seeks to fill) is a Texas corporation with its principal place of business in Texas.[11] These facts point to the application of Texas law.[12] Stolt is a foreign business corporation, but its principal business office is in Texas. Doc. 23 at 6; *see also* Doc. 42.[13] This also weighs in favor of the application of Texas law. The work at issue took place in Texas, further weighing in favor of applying Texas law. Admittedly, Central Boat is a Louisiana corporation with its principal place of business in Louisiana.[14] But in considering the domicile of the "injured," the relevant injured party for purposes of a putative oblique action (or similar action under Texas law) remains Harbor Dredging. Thus, these factors

---

[11] Doc. 23 at 6.

[12] *See also* Kettering, Am. Bankr. Inst. L. Rev. 319 at 357 ("As a basis for discussion, therefore, I propose the following two pronged rule: (a) the debtor's home jurisdiction (defined as jurisdiction of the chief executive office for an organization and jurisdiction of domicile for an individual) at the time of the transfer determines the fraudulent transfer law that applies to a constructively fraudulent transfer . . . .").

[13] Harbor Dredging's co-defendant, Port Bolivar Marine Services, Inc., is also a Texas corporation with its principal place of business in Texas. Doc. 1 at 2.

[14] Doc. 1, ¶ 3.

overwhelmingly favor the application of Texas law as a gap filler. Given that Texas law must fill the gap in maritime law relative to Central Boat's potential remedies under the circumstances, the attempt to amend to add a claim under Louisiana law is futile.

## IV.   CONCLUSION

For all these reasons,

**IT IS ORDERED** that the Motion to Amend (Doc. 103) is **DENIED.**

New Orleans, Louisiana, August 16, 2024.

**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**

12