UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CENTRAL BOAT RENTALS, INC. | CIVIL ACTION |
| VERSUS | NO. 23-2861 |
| HARBOR DREDGING, INC., ET AL. | SECTION "O" |

## ORDER AND REASONS

Before the Court are three unopposed motions by Third-Party Defendant and Counter-Claimant Stolt Tankers USA, Inc. ("Stolt"): (1) motion [1] for summary judgment dismissing all claims asserted by Third-Party Plaintiff, Harbor Dredging, Inc. ("Harbor Dredging") against Stolt; (2) motion [2] for entry of judgment under Rule 58(d) of the Federal Rules of Civil Procedure, seeking entry of a judgment in favor of Third-Party Defendant Stolt and against Third-Party Plaintiff Harbor Dredging, dismissing with prejudice Harbor Dredging's third-party claims against Stolt; and (3) motion [3] for default judgment under Rule 55(b)(2) in favor of Counter-Claimant Stolt and against Counter-Defendant Harbor Dredging as to Stolt's counterclaim.

In its motion for summary judgment and motion for entry of judgment, Stolt seeks a judgment dismissing all claims asserted by Harbor Dredging against it. In its motion for default judgment, Stolt moves for relief concerning its counterclaims for affirmative relief, requesting that the Court enter judgment in its favor in the amount of $407,863.49 plus $40,235.24 in prejudgment interest. For the following reasons,

---

[1] ECF No. 80.
[2] ECF No. 128.
[3] ECF No. 138.

the Court will **GRANT** the motion seeking entry of a separate judgment dismissing, or memorializing dismissal, with prejudice of Harbor Dredging third-party claims against Stolt. The Court will **DENY AS MOOT** Stolt's motion for summary judgment seeking the same relief (dismissing with prejudice Harbor Dredging's claims against Stolt). Finally, the Court will **GRANT** Stolt's motion for default judgment in its favor as to its affirmative counterclaim against Harbor Dredging with a proviso respecting the quantum of prejudgment interest. Stolt's motion for default judgment will be granted insofar as Stolt has demonstrated entitlement to $407,863.49 in compensatory damages as well as entitlement to prejudgment interest. As set forth below, Stolt is ordered to file a proposed default judgment and, in its motion for leave to file the same, Stolt shall brief whether Texas's rate or the federal rate should apply along with the quantum warranted by applicable law. The Court will withhold entry of the default judgment on damages and prejudgment interest until the briefing and proposed judgment is filed. Finally, disposition of these motions resolves all pending claims and, accordingly, the pretrial conference and trial dates shall be cancelled.

## I.    BACKGROUND

This lawsuit is the fallout from a failed dredging project. What is left[4] focuses on claims among Harbor Dredging and Stolt, so those pertinent facts and procedural history are recounted.

---

[4] Recently, Central Boat and Stolt indicated that they settled their claims and the Court dismissed those claims without prejudice pending consummation of the settlement. ECF Nos. 235, 236. Central Boat has pursued post-judgment remedies pertaining to its claims resolved among other parties, such as Port Bolivar Marine Services, Inc. ("Port Bolivar").

*Dredging Project*

Stolt contracted with Harbor Dredging to perform dredging work at Stolt's site in Harris County, Texas (the "Project").[5] Harbor Dredging in turn contracted with Central Boat Rentals, Inc. ("Central Boat") to charter barges to perform the work.[6] Though the dredging began in 2023, work ceased after Central Boat's invoices for its charters went unpaid.[7]

And thus the remaining claims which are subject to the instant lawsuit stem from Harbor Dredging and Stolt's Master Service Agreement ("MSA"), which was executed in February 2020.[8] The MSA governed the dredging services Harbor Dredging agreed to provide to Stolt.[9] The MSA requires that all work requests be memorialized in a Work Order.[10] The MSA provides that its terms prevail over any conflicting terms contained in another document and it further contains a merger clause, which prohibits oral modifications.[11]

A couple of years after the MSA's execution, Stolt contacted Harbor Dredging for a quote to dredge Stolt's docks to a depth of 10 feet.[12] Harbor Dredging provided Stolt with the requested quote for the project, as well as updated quotes at Stolt's request.[13] Soon after, Stolt accepted Harbor Dredging's offer and issued Purchase

---

[5] ECF No. 41 (Stolt's Counterclaim).
[6] Harbor Dredging, Central Boat Rentals, Inc., and Port Bolivar had executed a Barge Bareboat Charter Agreement and Master Towage Agreement for towage services to be provided by Central Boat as part of a dredging project performed for Stolt's benefit. ECF No. 1.
[7] ECF No. 1; ECF No. 41.
[8] ECF No. 138-1 (citing ECF Nos. 41 and 41-1); ECF No. 41-1.
[9] *Id.* at 1.
[10] ECF No. 41-1.
[11] *Id.*
[12] ECF No. 41-2 at 2.
[13] ECF No. 23-1; ECF No. 138-1.

Orders to Harbor Dredging.[14] Harbor Dredging commenced dredging on February 20, 2023, over a month later than it said it would do so.[15]

Even while the dredging work was being performed, Stolt submits that the work was performed in a poor workmanlike manner, replete with delays, inefficient use of resources, cost overruns, and fill-in of previously dredged areas.[16] Just a few months later in June 2023, several of Harbor Dredging's subcontractors stopped work due to Harbor Dredging's failure to pay for their work.[17] Harbor Dredging failed to resolve these payment disputes and failed to arrange for replacement subcontractors.[18] Work ceased after just a few months when Central Boat's invoices for its charters went unpaid.[19] Harbor Dredging failed to complete the work.[20]

*Procedural History*

After its invoices under the charter agreement went unpaid, in late July 2023, Central Boat sued Harbor Dredging and Port Bolivar Marine Services, Inc. ("Port Bolivar") alleging claims for breach of contract and claims under Louisiana's Open Account Statute.[21] Central Boat brought its suit under Federal Rule of Civil Procedure 9(h) and invoked the Court's admiralty jurisdiction under 28 U.S.C. § 1333.[22] Harbor Dredging and Port Bolivar promptly answered.[23] The case was

---

[14] ECF No. 41-4.
[15] ECF No. 138-1.
[16] ECF No. 138-1; ECF No. 41.
[17] *Id.* (citations omitted).
[18] ECF No. 41.
[19] ECF No. 1; ECF No. 41.
[20] ECF No. 1; ECF No. 41; ECF No. 138-1.
[21] ECF No. 1.
[22] *Id.*
[23] ECF Nos. 8, 9.

initially assigned to another section of this Court, which issued a scheduling order in October 2023.[24] Central Boat moved[25] for summary judgment on its claims against Harbor Dredging.

Port Bolivar filed a crossclaim[26] against Harbor Dredging for breach of contract. Harbor Dredging amended its answer to Central Boat's lawsuit and filed a third-party complaint against Stolt via Rule 14(c) of the Federal Rules of Civil Procedure.[27] In its third-party complaint, Harbor Dredging alleged claims against Stolt: breach of an oral agreement (*i.e.,* alleging that Stolt orally agreed to pay for additional dredging yardage not contemplated in the original work order) and unjust enrichment. Under Rule 14(c), Harbor Dredging tendered Stolt as a defendant to Central Boat on Central Boat's claims.

Stolt answered Harbor Dredging's Third-Party Demand and asserted counterclaims for breach of contract and breach of warranty against Harbor Dredging.[28] Stolt's counterclaims arise from the MSA.[29]

Shortly after Central Boat's motion for summary judgment was briefed and submitted before another section of this Court, the case was transferred to this section in late December 2023.[30]

---

[24] ECF No. 19.
[25] ECF No. 29.
[26] ECF No. 25.
[27] ECF No. 23.
[28] *Id.*; ECF No. 41. Harbor Dredging answered Stolt's counterclaim.
[29] ECF Nos. 41, 41-1.
[30] ECF No. 40.

Less than one year after the case was filed—on April 16, 2024—Harbor Dredging's counsel withdrew without substituted counsel.[31] Given that a corporation may not appear in federal court without counsel, Stolt promptly filed a motion[32] requesting that the Court set a deadline for Harbor Dredging to retain counsel; warn Harbor Dredging that its failure to comply with that deadline would result in the dismissal of Harbor Dredging's claims *and* the entry of default judgment against Harbor Dredging; and reset remaining Scheduling Order deadlines.[33] After a status conference with the parties, the Court granted Stolt's motion[34] and ordered Harbor Dredging to enroll counsel by June 26, 2024.[35] The Court also warned Harbor Dredging that its failure to comply with that deadline could result in a default judgment against it.[36] Despite these warnings, Harbor Dredging failed to enroll new counsel by the Court's deadline—or ever.[37]

Motion practice continued. But only Central Boat and Stolt meaningfully participated and complied with scheduling order deadlines.

Stolt filed a second motion[38] directed to addressing Harbor Dredging's lack of representation, this one seeking to enforce the Court's order[39] that Harbor Dredging

---

[31] ECF No. 48.

[32] ECF No. 52.

[33] *Id.*

[34] *Id.*

[35] ECF No. 100. Harbor Dredging did not participate in the June 10, 2024 status conference. The Court specified that the discovery deadline would be extended for the limited purpose of allowing the parties to conduct depositions of Harbor Dredging's corporate representative, Roland Maturin, and for Harbor Dredging to produce discovery. Roland Maturin has since passed away. ECF No. 207.

[36] ECF No. 100.

[37] *Id.*

[38] ECF No. 105.

[39] ECF No. 100.

enroll counsel or face litigation consequences if it failed to enroll counsel to appear on its behalf. Specifically, Stolt requested that the Court enforce its June Order and direct the Clerk to enter a preliminary default as to Stolt's counterclaim against Harbor Dredging *and* to dismiss Harbor Dredging's third-party claims against Stolt with prejudice.[40] Again, this time in August 2024, the Court granted the motion and ordered the parties to file their respective motions seeking default judgment against Harbor Dredging under Rule 55(b)(2).[41] Stolt first moved for preliminary default under Rule 55(a) as to Stolt's counterclaims against Harbor Dredging.[42] Shortly thereafter the Clerk of Court entered preliminary default against Harbor Dredging.[43]

Meanwhile, Central Boat and Port Bolivar executed a consent judgment[44] and Central Boat obtained a default judgment[45] against Harbor Dredging. Thereafter, Central Boat pursued post-judgment relief against Harbor Dredging and Port Bolivar as it continued to pursue its claims (tendered by Harbor Dredging) against Stolt. Recently, however, Central Boat and Stolt settled in principle their claims, which have been dismissed without prejudice.[46]

---

[40] ECF No. 105-1.

[41] ECF No. 120. The Court wishes to clarify that its August 16, 2024 order granted Stolt's motion, but did not directly address Stolt's request for the dismissal of Harbor Dredging's third-party claims with prejudice in its order. The Court did not intend to dismiss Harbor Dredging's claims against Stolt at that time.

[42] ECF No. 122. Central Boat also moved for entry of preliminary default. ECF No. 123. After amending its motion for default judgment against Harbor Dredging, ECF Nos. 167 and 170, on March 28, 2025, the Court granted Central Boat's motion for default judgment and entered a default judgment in favor of Central Boat and against Harbor Dredging. ECF No. 172. Central Boat's motion for summary judgment as to its claims against Harbor Dredging was denied as moot. ECF No. 173.

[43] ECF Nos. 133, 135.

[44] ECF Nos. 117, 151.

[45] ECF No. 172.

[46] ECF Nos. 235, 236.

What's left in this litigation are claims among Stolt and Harbor Dredging. Notably, since its counsel withdrew, Harbor Dredging has failed to comply with this Court's orders, including the Court's orders that it enroll counsel or face litigation sanctions. Thus, Harbor Dredging has been ineligible to and/or failed to participate in this litigation for some time. By three motions, Stolt seeks to dispose of all remaining claims:

First, Stolt requests that the Court grant its motion[47] for summary judgment dismissing with prejudice all claims asserted by Defendant/Third-Party Plaintiff Harbor Dredging against Stolt as Third-Party Defendant.

Second, Stolt requests[48] entry of a judgment in its favor dismissing with prejudice Harbor Dredging's third-party claims against it based on the Court's orders granting Stolt's motions for miscellaneous relief, which in part had requested dismissal of Harbor Dredging's third-party claims against Stolt related to Harbor Dredging's failure to enroll counsel in this litigation since its counsel withdrew nearly two years ago.

Third, pursuant to the Court's August 16 Order and Rule 55(b)(2), Stolt now moves[49] for default judgment in its favor on its counterclaims (arising from Harbor Dredging's obligations under the MSA and Work Order) against Harbor Dredging as counter-defendant; Stolt seeks compensatory damages in the amount of $407,863.49

---

[47] ECF No. 80.
[48] ECF No. 128.
[49] ECF No. 138.

and prejudgment interest in the amount of $40,235.24.[50] The Court takes up these unopposed[51] motions now.

## II.  LAW AND APPLICATION

Stolt's first and second motions each requests that the Court dismiss with prejudice Third-Party Plaintiff Harbor Dredging's affirmative breach of oral contract and unjust enrichment claims against Stolt; only the proffered basis for dismissal is different. The third seeks a default judgment in Stolt's favor and against Harbor Dredging respecting Stolt's affirmative counterclaims for breach of contract and breach of warranty against Harbor Dredging.

For the following reasons, Stolt has previously and here again demonstrates entitlement to a judgment dismissing with prejudice Harbor Dredging's claims against it; a separate judgment will follow. The Court need not reach Stolt's motion for summary judgment, which seeks the same relief—dismissal with prejudice of those same claims by Harbor Dredging—and accordingly that motion will be denied as moot. Finally, Stolt has demonstrated entitlement to a default judgment in its favor on compensatory damages as well as prejudgment interest with the proviso that the quantum of prejudgment interest needs to be calculated under either Texas's, or the federal, rate. The Court thus orders Stolt to file a motion seeking leave to file its proposed default judgment with the accompanying briefing supporting the prejudgment interest quantum to be included in the proposed judgment.

---

[50] ECF No. 138.
[51] Though Central Boat initially opposed Stolt's motions, it withdrew its opposition after Central Boat and Stolt reached a settlement. Harbor Dredging, which never complied with the orders that it enroll counsel, has not filed an opposition.

**A.  Under Rule 41(b), Stolt Is Entitled to Judgment Dismissing with Prejudice Harbor Dredging's Claims Against It.**

When a plaintiff fails to comply with the Court's orders and abandons its claims, dismissing with prejudice may be appropriate. Rule 41(b) provides:

> Involuntary Dismissal; Effect. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

This rule applies equally to dismissal of third-party claims. *See* Fed. R. Civ. P. 41(c).

Though subsection (b) of Rule 41 references a defendant's motion, the Court may exercise its discretion *sua sponte* to dismiss claims under this rule and, additionally, the Court has inherent authority to dismiss a lawsuit or claims for these same reasons, including for failure to comply with Court orders or for failure to prosecute. *See, e.g., Degen v. United States*, 517 U.S. 820, 826 (1996) ("A federal court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case."); *Link v. Wabash R. Co.,* 370 U.S. 626, 629-31 (1962) (rejecting petitioner's argument that Rule 41(b) prohibits involuntary dismissals for failure of the plaintiff to prosecute absent motion by defendant, observing that "[t]he authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted"); *see also* 9 Charles Alan Wright & Arthur R. Miller, Fed. Prac. and Proc. § 2372 (4th ed. 2025) ("Federal Rule of Civil Procedure 41(b) speaks of dismissal on the defendant's motion, but . . . the district

court may dismiss on its own motion for want of prosecution or for failure to comply with a court order.").

One scenario where Rule 41(b) may be implicated is where a corporation has no licensed attorney representing it in a case brought in federal court. Although individuals may proceed *pro se* in federal court, corporations like Harbor Dredging may not; rather, such artificial entities must be represented by a licensed attorney to appear in federal court. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) (observing that courts have interpreted 28 U.S.C. § 1654 as precluding corporations, partnerships, or associations from appearing in federal court absent representation by licensed counsel); *see also Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004) (describing as "well-settled" the rule that a corporation or business association "cannot appear in federal court unless represented by a licensed attorney").

"[W]hen confronted with an unrepresented corporation" or business entity, the Court has discretion to determine the appropriate course of action. *Memon*, 385 F.3d at 873. Where the unrepresented corporation is the defendant, courts generally admonish the corporation that it cannot proceed without licensed counsel, formally order it to retain counsel, strike its defenses, and/or ultimately consider whether dismissal or a default judgment is warranted. *See id.*; *see also Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) (*per curiam*). Where the unrepresented corporation is the plaintiff, the Court typically "warn[s] the corporation that it must retain counsel or formally order[s] it to do so before

11

dismissing the case." *See Memon*, 385 F.3d at 873; *see also Am. Safety LLC v. Alger*, No. 20-3451, 2021 WL 1753808, at *2 (E.D. La. May 4, 2021) (Brown, J.) (denying motion to vacate entry of default as to LLC but granting request for additional time to obtain counsel and file an answer); *see also Transco Syndicate #1, Ltd. V. Rose Towing Serv., Inc.*, No. 96-2581, 1997 WL 35219, at *1 (E.D. La. Jan. 27, 1997) (Fallon, J.) (ordering corporation to enroll licensed counsel or show cause why its answers should not be stricken).

*Memon* is instructive. There, the Fifth Circuit reversed the district court's dismissal for lack of attorney representation where a corporation appeared in court and pursued claims through a non-attorney corporate officer. 385 F.3d at 874–75. Critically, the district court never ordered the corporation to retain an attorney, nor had the district court admonished the corporation that it could not proceed without an attorney. *Id.* at 872-73.[52] Unlike the district court in *Memon*, the Fifth Circuit observed that "[i]n virtually every case in which a district court dismissed the claims (or struck the pleadings) of a corporation that appeared without counsel, the court expressly warned the corporation that it must retain counsel or formally ordered it to do so before dismissing the case," or dismissed the case without prejudice in order to "allow[] the corporation to re-file after acquiring a lawyer." *Id.* at 874 (collecting cases). Dismissing with prejudice the entity's case without ordering it to obtain counsel or otherwise providing a warning was error. So the Fifth Circuit reversed, holding that it was error for the district court to have dismissed with prejudice the

---

[52] Notably, the corporate officer acting on its behalf moved the court to dismiss the case without prejudice because he wished to hire an attorney but could not afford one. *Id.* at 872.

corporation's case where it "never admonished" the corporation that it needed to retain counsel before dismissal. *Id.* at 874–75.

Stolt has twice invoked Rule 41(b) in support of its request that Harbor Dredging's affirmative third-party claims against Stolt be dismissed with prejudice if Harbor Dredging fails to comply with court orders that it enroll counsel.[53] The Court agreed that such an approach was warranted.[54] Indeed, the Court granted Stolt's motion in which Stolt expressly requested dismissal with prejudice of Harbor Dredging's claims.[55] Though the Court's prior order explicitly focused on default (which concerned Stolt's counterclaims against Harbor Dredging), Stolt was (and is) likewise entitled to dismissal of Harbor Dredging's third-party claims against Stolt. Insofar as Stolt now applies for a separate judgment setting forth the same, its request is hereby granted.

Applying Rule 41(b), the Court (again) agrees that dismissal with prejudice is warranted and accordingly Stolt is entitled to judgment in its favor dismissing with prejudice Harbor Dredging's Third-Party Complaint against, and Rule 14(c) tender of, Stolt. To be sure, the Court has twice granted motions by Stolt in which Stolt requested that the Court order Harbor Dredging to retain counsel and warn Harbor Dredging that failure to do so will result in dismissal of Harbor Dredging's claims and entry of default as to those claims advanced against Harbor Dredging.[56] In granting Stolt's motions, the Court expressly ordered Harbor Dredging to enroll counsel or face

---

[53] ECF Nos. 52-1, 105-1.
[54] ECF Nos. 105, 120.
[55] ECF No. 120 (granting ECF No. 105).
[56] ECF Nos. 100 (granting ECF No. 52) and 120 (granting ECF No. 105).

the consequences, citing the applicable case law authorizing dismissal and/or default. Having applied *Memon*'s warn or instruct-before-dismissal approach, the Court granted Stolt's motion requesting dismissal with prejudice of Harbor Dredging's third-party claims against Stolt. Dismissal with prejudice was and is warranted where, as here, Harbor Dredging has failed to enroll counsel in nearly two years, in clear defiance of this Court's orders.[57]

Not only has Harbor Dredging failed to enroll counsel, it has violated the Court's orders mandating that it do so and it has failed to prosecute its claims or defend against those claims asserted against it. Though Rule 41(b) was inapplicable in *Memon* because the district court had never ordered the corporation to enroll counsel, *see id.* at 873 n.4, here, the Court has twice ordered Harbor Dredging to obtain counsel. And, Harbor Dredging has failed to comply with these orders.[58] Harbor Dredging has ceased participation in this litigation and effectively abandoned its third-party claims against Stolt. Accordingly, the Court finds that Rule 41(b) authorizes dismissal of Harbor Dredging's claims against Stolt for failure to comply with this Court's orders and for its failure to prosecute for nearly two years, entitling Stolt to a separate judgment setting forth the same.

---

[57] In a sworn declaration, Stolt's attorney asserts, among other things, that Ronald Maturin, Harbor Dredging's corporate representative, "has not contacted me or my colleagues since the [Court's] June 12[, 2024] Order was entered or represented in any way that he intends to comply with the June 12 Order." ECF No. 138-4 (Exhibit C to Stolt's motion for default judgment). Apparently, Mr. Maturin died in September 2025. ECF No. 207.

[58] Considering the notice and warnings contained in Stolt's motions (as well as motions by other parties in the case) and this Court's orders, there can be no doubt that Harbor Dredging then knew that it needed to enroll counsel or face dismissal with prejudice of its claims, *see Memon*, 385 F.3d at 875, as well as face default judgment against it due to its failure to enroll counsel of record to participate in these proceedings.

Because the Court finds that Stolt is entitled to a judgment in its favor dismissing Harbor Dredging's claims against it, the Court need not reach Stolt's motion for summary judgment. Thus, Stolt's motion for summary judgment seeking the same relief—dismissal with prejudice of Harbor Dredging's third-party complaint and Rule 14(c) tender of Stolt—will be dismissed as moot.

The Court turns to consider Stolt's motion for default judgment as to its counterclaims against Harbor Dredging.

### B.  Under Rule 55(b), Stolt Is Entitled to a Default Judgment in Its Favor on Its Counter-Claims Against Harbor Dredging.

### 1.  Rule 55(b) Standard

Obtaining a default judgment is a two-step process. First, the movant must petition the clerk for an entry of default. "When a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the clerk enters this technical or preliminary default, then, the second step is implicated: the movant may move for a default judgment under Rule 55(b). If the plaintiff's claim is not for a sum that can be made certain by computation, then the party against whom the judgment for affirmative relief is sought must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). Timely written notice of the application for default judgment "must be served" on any "party against whom a default judgment is sought [if that party] has appeared personally or by a representative." *Id.*

15

"Default judgments are available only when the adversary process has been halted because of an essentially unresponsive party." *EW Polymer Group, LLC v. GSX Int'l Group, Inc.*, 622 F. Supp. 3d 232, 237 (M.D. La. Aug. 17, 2022) (citing *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). The district court's "role . . . in adjudicating a motion for default judgment is limited." *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). A default judgment "must be 'supported by well-pleaded allegations' and must have 'a sufficient basis in the pleadings.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The well-pleaded allegations in the complaint are assumed to be true, except regarding damages. *Nishimatsu*, 515 F.2d at 1206; *see also United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Indeed, "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact[.]" *Escalante*, 34 F.4th at 492-93 (citation omitted). However, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. Accordingly, "even if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." *Escalante*, 34 F.4 at 493.

Courts consider several factors when determining whether to enter a default judgment, including "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the

harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citation omitted). Absent any request to set aside a default or a suggestion by a defendant that it has a meritorious defense, the standard for a default judgment has been satisfied. *United States v. Bentley*, 756 F. Supp. 2d 1, 3 (D. D.C. 2010) (citation omitted).

Whether to conduct a hearing on an application for default judgment is within the Court's discretion. *See* Fed. R. Civ. P. 55(b)(2)(A)-(D); *see also Wooten*, 788 F.3d at 496 (citations omitted). Rule 55 allows plaintiffs to submit evidence in order to "establish the truth of any allegations [in their complaint] [and] flesh[ ] out [their] claim" as well as to determine the amount of damages. *See Wooten*, 788 F.3d at 497-500 (cleaned up); *see also* Fed. R. Civ. P. 55(b)(2)(B), (C).

If the Court determines that a default judgment is warranted, it must then "fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly." *M C Bank & Trust Co. v. Suard Barge Serv., Inc.*, No. 16-14311, 2017 WL 3991076, at \*5 (E.D. La. Sept. 11, 2017) (Vance, J.) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)). "A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated 'by detailed affidavits establishing the necessary facts.'" *EW Polymer Group, LLC v. GSX Int'l Group, Inc.*, 622 F. Supp. 3d 232, 239 (M.D. La. 2022) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). If the declaratory judgment movant seeks a liquidated sum "or one capable of mathematical calculation [*i.e.,* one

that can be computed with certainty by reference to the pleadings and supporting documents alone]" then the Court acts within its ample discretion to forego a hearing, which is vested to the Court's discretion under Rule 55(b). *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (district court has "wide latitude" in determining the amount of damages to award upon default judgment).

For example, another section of this Court determined that a declaration and various invoices submitted by the lessor of remotely-operated vehicles and related equipment attesting to the amount owed by the lessee provided sufficient evidence of the entry of a default judgment on the lessor's breach-of-contract and conversion claims in the amount of $863,950, without the need for an evidentiary hearing. *Mid-Gulf Shipping Company Inc. v. Energy Subsea LLC*, 472 F. Supp. 3d 318 (E.D. La. 2020); *accord Cutcliff v. Reuter*, 791 F.3d 875 (8th Cir. 2015) (finding that an evidentiary hearing was unnecessary to determine the amount of damages awarded to plaintiffs against a limited liability company and a bankruptcy debtor, given that the plaintiffs submitted affidavits and documentary proof showing how much they invested in the company member's misappropriation scheme, and the defendants did not challenge the accuracy of the evidence).

So too here. The Court finds that a hearing is unnecessary where Stolt has provided ample basis in the record—including declarations and documentary evidence—supporting entitlement to a default judgment and the damages requested.

## 2. Stolt's Motion for Default Judgment Has a Sufficient Basis in the Pleadings and Record.

18

In abandoning this litigation, not only has Harbor Dredging failed to prosecute its third-party claims against Stolt, but Harbor Dredging likewise has failed to appear and advance its asserted defenses against Stolt's affirmative counterclaim.[59] Stolt seeks default judgment on its breach of contract and breach of warranty counterclaim against Harbor Dredging.[60] Stolt's counterclaim stems from Stolt and Harbor Dredging's MSA and Work Orders pertaining to the specific dredging project—ultimately abandoned by Harbor Dredging—at issue in this case.

First, pursuant to Rule 55(a), Stolt obtained an entry of preliminary default.[61] Second, in its default judgment application, Stolt submits that its counterclaim against Harbor Dredging can be determined based on its allegations in support of its counterclaim, the plain language of the MSA and Work Orders, and the unopposed opinions of Stolt's experts. Stolt contends that no hearing is needed given its allegations; the MSA's terms requiring Harbor Dredging to complete the work in a safe and workmanlike manner and to correct any defects or pay Stolt to obtain another contractor to re-perform defective work; the undisputed fact that Harbor Dredging's poor performance resulted in its failure to complete the work (dredging Stolt's docks to the agreed upon 10-foot draft at low tide); and thus Harbor Dredging is liable to Stolt for resulting damages under the MSA.

The Court agrees. Stolt's application for default judgment is "'supported by well-pleaded allegations' and . . . ha[s] 'a sufficient basis in the pleadings.'" *Wooten*,

---

[59] Since filing its answer on January 29, 2024 (ECF No. 43), Harbor Dredging has filed nothing directed towards defending against Stolt's counterclaims.

[60] ECF No. 41 at 15–19; ECF No. 138.

[61] ECF No. 135.

788 F.3d at 498 (citation omitted). Harbor Dredging has neither moved to set aside the entry of preliminary default, nor advanced any argument in support of any defenses to Stolt's counterclaim. Furthermore, no material issues of fact are at issue, the grounds for default are clearly established, the default was not caused by a good faith mistake or excusable neglect, there has been no submission concerning the harshness of a default judgment, and the Court does not find that it would be obliged to set the default aside on any motion requesting the same.

Foremost, Stolt has demonstrated that the grounds for default are clearly established. In its counterclaim against Harbor Dredging, Stolt seeks compensatory damages for breach of the MSA, which it contends is a maritime contract governed by maritime law. The Court agrees. *See Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 680 (5th Cir. 2019) (setting forth the elements for determining whether a contract is a maritime contract and finding that a barge played a critically important role in a dock construction project such that the dock contract was a maritime contract); *cf. Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430, 440 (5th Cir. 2024) (observing that the primary objective of the relevant contract, which "was dredging a navigable waterway in a port that services international and national commerce," centered on maritime commerce); *see also J-Way S., Inc. v. U.S. Army Corps of Engineers*, 34 F.4th 40, 46 (1st Cir. 2022) (dredging contract was maritime contract given that objective—dredging a navigable waterway—had a direct effect on maritime commerce); *see also Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 837 (11th Cir. 2010) (same).

20

Like in an ordinary contract dispute, a plaintiff or counterclaimant asserting breach of contract under federal maritime law must demonstrate the following elements: "(1) contract; (2) breach of that contract; and (3) damages." *Mid-Gulf Shipping Co. Inc. v. Energy Subsea LLC*, 472 F. Supp. 3d 318, 324 (E.D. La. 2020) (Africk, J.) (quoting *FEC Heliports, LLC v. Hornbeck Offshore Operators, LLC*, No. 15-4827, 2016 WL 5678557, at *5 (E.D. La. Oct. 3, 2016) (Feldman, J.)); *accord Central Boat Rentals, Inc. v. Pontchartrain Partners, LLC*, 744 F. Supp. 3d 635, 639-40 (E.D. La. 2024) (Ashe, J.)

Taking as true Stolt's well-pled allegations in its counterclaim, which includes the governing MSA, Stolt has demonstrated entitlement to a default judgment. The MSA provides that the dredging services should be memorialized in written "Work Orders."[62] About two years after the MSA was executed, Stolt contacted Harbor Dredging for a quote to dredge Stolt's docks to a depth of 10 feet.[63] Harbor Dredging sent Stolt the requested quote.[64] Stolt and Harbor Dredging agreed on a price of $559,070, including a $125,000 mobilization/demobilization fee, to dredge Stolt's docks F through K over 39 days, and $236,490 to dredge Stolt docks L through Q over 19 days (the "Work").[65] Stolt accepted Harbor Dredging's offer for the Work and

---

[62] ECF No. 41-1 at 1.
[63] ECF No. 41-2 at 2.
[64] ECF No. 23-1.
[65] ECF No. 41-3.

issued Purchase Orders to Harbor Dredging.[66] Work on the dredging project began in 2023, but ceased shortly thereafter.[67]

Harbor Dredging was solely responsible for paying its subcontractors and for its subcontractors' performance under the MSA.[68] Harbor Dredging failed to perform the Work within the fixed time and cost specified; these twin failures constituted a breach of the parties' contract, including the MSA's terms and conditions and standard of performance provision.[69] That Harbor Dredging performed the Work in a poor, unworkmanlike manner and failed to complete it likewise breached the terms and conditions in the MSA's warranty.[70] Under the MSA, Harbor Dredging is obliged to correct the defects or pay Stolt for costs and expenses necessary in hiring another contractor to re-perform the defective work.[71]

As a result of Harbor Dredging's poor performance and failure to complete the Work, Stolt submits a sworn declaration by a professional engineer and certified hydrographer, who opines that additional dredging of 10,069.9 cubic yards is required.[72] This additional dredging is required due to Harbor Dredging's failure to follow proper and customary dredging methods and its failure to pay its subcontractors, which resulted in its failure to perform the Work on areas it had not

---

[66] ECF No. 41-4. The Purchase Order for docks L through Q (ECF No. 41-4) contained an updated price of $237,300. Stolt submits this is the amount it actually paid for docks L-Q. ECF No. 138-1 at 4.

[67] ECF No. 1; ECF No. 41.

[68] ECF Nos. 41 at ¶35; 41-1 at Article 14.1.

[69] ECF Nos. 41 at ¶¶ 24, 29-30; 41-1 at Article 8.1.

[70] ECF Nos. 41 at ¶ 33; 41-1 at Article 8.5 ("Contractor hereby guarantees that the Work shall be performed in a safe and workmanlike manner and that the Work shall be free from any and all defects from final acceptance of the Work by the Company.").

[71] ECF Nos. 41 at ¶ 37; 41-1 at Article 8.5.

[72] ECF No. 138-3 (Declaration of Roy Okurowski at ¶ 17).

yet completed.[73] In other words, Stolt submits that Harbor Dredging breached the primary object of the contract—dredging the berths to a depth of 10 feet—and it breached the warranty providing that its work would be performed in a workmanlike manner and free of defects.

Stolt's well-pleaded factual allegations—taken as true—establish each element of its counterclaim. First, there was a contract between Stolt and Harbor Dredging.[74] Second, Harbor Dredging breached the parties' agreement by failing to complete the Work within the fixed time and specified cost. Harbor Dredging's quote states that it would complete each dock within a specified period of time at a fixed cost.[75] And Harbor Dredging did not complete the project: the project began in 2023, but work stopped after Harbor Dredging failed to pay the invoices for subcontractors, including Central Boat.[76] Harbor Dredging did not resolve these payment disputes and failed to arrange replacement subcontractors to complete the work. Further, the MSA's "Standard of Performance" provision states that the "Contractor [Harbor Dredging] shall execute the Work in a good and workmanlike manner, continuously and diligently in accordance with generally accepted Industry standards, using qualified, careful and efficient workers and in strict conformity with provisions of this Contract."[77] But Harbor Dredging fell below this standard. And under the MSA, Harbor Dredging was responsible for its subcontractors' performance and payment.[78]

---

[73] *Id.* ¶¶10, 14; ECF No. 138-2 (Declaration of Thomas H. Johnsrud) ¶¶ 16-19.
[74] ECF No. 41-1; ECF No. 41-3.
[75] ECF No. 23-1.
[76] ECF No. 1; ECF No. 41.
[77] ECF No. 41-1 at 3.
[78] *Id.* at 5. Article 14.1 of the MSA reads: "Contractor [Harbor Dredging] shall be fully responsible to Company [Stolt] for any Work of its subcontractors."

Stolt has thus demonstrated entitlement to damages for Harbor Dredging's breach of contract and warranty.

### 3. Amount of Recovery

#### a) Compensatory Damages

Next, the Court must "fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly." *Mid-Gulf Shipping Co. Inc. v. Energy Subsea LLC*, 474 F. Supp. 3d 318, 325 (E.D. La. 2020) (citations omitted). Stolt provides detailed declarations in support of its motion. Because the amount Stolt sustained in damages is capable of mathematical calculation based on record evidence, no hearing is needed. *See id.* (citations omitted).

Here, Stolt provides support for recovery of $407,863.49 in damages. Stolt agreed to pay Harbor Dredging a fixed price in return for dredging the docks to the agreed upon 10-foot draft. To assess Stolt's damages, the average rate of $28.09 per cubic yard was calculated based on the yardage that Harbor Dredging estimated would be needed to dredge the L through Q berth areas to the agreed upon 10-foot depth. Based on this rate, Stolt submits that the additional dredging will cost $282,863.49 to complete. As it paid to Harbor Dredging, Stolt must pay a de/mobilization fee—$125,000—to complete the Work.[79] Using Harbor Dredging's rates and charges, Stolt submits that it is entitled to recover a total of $407,863.49 in damages from Harbor Dredging for its breach of the parties' agreements.[80]

---

[79] Exhibit A at 23. Harbor Dredging charged (and Stolt paid) this fee in the amount of $125,000.
[80] Stolt withdraws the portion of its counterclaim in which it purported to seek damages for internal costs and lost revenue in light of the MSA's consequential damages waiver. ECF No. 138-1 at 11 n.59.

24

In sum, in support of its request for compensatory damages, Stolt submitted Harbor Dredging's quotes for docks F through K and L through Q, along with the costs, yardage, and number of days to dredge each dock, and a sworn declaration, which establishes the remaining yardage needed to complete the dredging project, 10,069.9, at a rate $28.09/cubic yard.[81] And based on this rate, the additional dredging will cost Stolt $282,863.49 to complete.[82] Stolt's damages assessment additionally includes the $125,000 mobilization/demobilization fee, which Stolt paid to Harbor Dredging.[83] Thus, Stolt has demonstrated that it is entitled to a compensatory damages judgment in its favor in the amount of $407,863.49.

### b) Prejudgment Interest

Stolt additionally seeks to recover a minimum of $40,235.24 in prejudgment interest.[84] Because a prejudgment interest award "is the rule rather than the exception, and, in practice, is well-nigh automatic" in cases under maritime law, the Court agrees that Stolt is entitled to recover prejudgment interest. *See Offshore Marine Contractors v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 351 (5th Cir. 2015) (internal quotations omitted). Because admiralty law does not fix a particular rate, the Court in its broad discretion must apply the interest rate prescribed by state or other federal law. *See id.* (courts "may look to the judgment creditor's actual cost of

---

[81] The rate of $28.09 per cubic yard is the average rate per cubic yard that Harbor Dredging estimated would be needed to dredge the L through Q berth areas to the agreed upon 10-foot depth. ECF No. 138-2 at 4–5 ¶ 21.

[82] *Id.*

[83] *Id.* at 5 ¶ 23.

[84] ECF No. 138-1 at 11–12. Stolt submits that this amount will increase in an amount dependent on the date the default judgment is entered.

borrowing money, to state law, or to other reasonable guideposts indicating a fair

level of compensation").

Courts award prejudgment interest "to compensate for the use of funds to

which the plaintiff was entitled, but which the defendant had use of prior to

judgment." *Id.* As another section of Court summarized the law on prejudgment

interest in admiralty cases:

> "'As a general rule, prejudgment interest should be awarded in
> admiralty cases – not as a penalty, but as compensation for the use of
> funds to which the claimant was rightfully entitled.'" *Ziegler v.
> Subalipack (M) SDN BHD*, 2018 WL 2933349, at *10 (S.D. Tex. June 12,
> 2018) (quoting *Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724,
> 728 (5th Cir. 1980)). The Fifth Circuit recognizes "the bedrock premise
> that an award for prejudgment interest in actions under the general
> maritime law is the rule rather than the exception," and that
> "prejudgment interest must be awarded unless unusual circumstances
> make an award inequitable." *Ryan Walsh Stevedoring Co. v. James
> Marine Servs., Inc.*, 792 F.2d 489, 492 (5th Cir. 1986). "Prejudgment
> interest in an action for breach of contract is allowable from the date the
> debt is due." *Am. Marine Tech, Inc. v. M/Y Alchemist*, 2022 WL 4345297,
> at *5 (S.D. Fla. Sept. 9, 2022) (citing *Nat'l Fire Ins. Co. of Hartford v.
> Fortune Constr. Co.*, 320 F.3d 1260, 1279 (11th Cir. 2003)), *adopted*,
> 2022 WL 4310894 (S.D. Fla. Sept. 19, 2022). Admiralty courts have
> broad discretion in setting the prejudgment interest rate and may look
> to state law for a fair level of compensation. *Todd Shipyards Corp. v.
> Auto Transp., S.A.*, 763 F.2d 745, 753 (5th Cir. 1985) (affirming use of
> state interest rate compounded daily to account for uncommonly high
> prime rates during the applicable period); *Platoro Ltd. v. Unidentified
> Remains of Vessel*, 695 F.2d 893, 907 (5th Cir. 1983) (observing that the
> particular interest rate lies within the district court's discretion after it
> evaluates the circumstances of the case).

*Central Boat Rentals, Inc. v. Pontchartrain Partners*, LLC, 744 F. Supp. 3d 635, 640-

41 (E.D. La. 2024) (Ashe, J.). There, the Court "[saw] no reason not to award

prejudgment interest at the Louisiana judicial interest rate as requested by" Plaintiff.

*Id.* at 641. On another occasion the same section of this Court applied a federal, post-

judgment rate to a prejudgment interest award in the absence of a governing law provision:

> After considering the circumstances of this case, including the absence from the charter agreement of any provision regarding interest or choice of law, and the crux of the dispute as concerning a maritime contract, this Court will assess prejudgment interest at the legal rate established under 28 U.S.C. § 1961.

*Drinnon Marine, LLC v. Four Rivers Towing of Alabama, LLC*, 549 F. Supp. 3d 505, 518 (E.D. La. 2021) (Ashe, J.).

Here, Stolt has demonstrated that it is entitled to prejudgment interest, award of which in maritime context is the rule rather than the exception, absent peculiar or unusual circumstances making such an award inequitable. No peculiar circumstances are present here. *See Trigleth v. Ocean Belt Maritime, Inc.*, 798 F. Supp. 3d 618 (E.D. La. 2025) (Ashe, J.); *Matter of Lasala*, 644 F. Supp. 3d 245, 278 (E.D. La. 2022) (Vitter, J.) (citation omitted). Stolt is thus entitled to reasonable prejudgment interest.

In setting the prejudgment interest rate, the Court may look to either state law—Texas or Louisiana—or to the legal rate established for post-judgment interest under 28 U.S.C. § 1961. A court might select "the lower federal interest rate" if it considers that the movant suffered no hardship without the interest monies. *See In re M/V Nicole Trahan*, 10 F.3d 1190, 1196-97 (5th Cir. 1994) (observing that an award of prejudgment interest at a lower rate than requested may be upheld when no inequity has been shown). Regardless, selecting the appropriate interest rate is within the Court's "broad discretion." *Pollsbury Co. v. Midland Enterprises, Inc.*, 715

F. Supp. 738, 769-70 (E.D.La.1989) (noting narrowly prescribed circumstances that may justify denying or limiting prejudgment interest and observing that "[d]eferal of repairs [ ] does not constitute such a circumstance"), *aff'd*, 904 F.2d 317 (5th Cir.), *cert. denied*, 498 U.S. 983 (1990).

Here, Stolt is entitled to prejudgment interest on an award on its breach of maritime contract counterclaim. The only question is quantum, which depends on which interest rate applies. Maritime law does not provide a particular prejudgment interest rate, so Stolt proposes that this Court apply the interest rate prescribed by the state of Louisiana under La.R.S. 9:3500 and has applied daily, monthly, or annually compounded interest. Stolt contends that it has calculated the prejudgment interest on a monthly compounded basis at the Louisiana judicial interest rate applicable to each year. Doing so, Stolt suggests that Harbor Dredging owes Stolt at least $40,235.24 in prejudgment interest, "which will increase in an amount dependent on the date that default judgment is entered."[85]

To be sure, as Stolt points out, this Court often applies the Louisiana rate in calculating prejudgment interest. However, for those cases in which this Court has applied Louisiana's interest rate, there was some nexus to Louisiana beyond the location of the lawsuit. *See, e.g., Bommarito v. Belle Chasse Marine Transp.*, 606 F. Supp. 3d 304, 319 (E.D. La. 2022) (marine personal injury occurred in Louisiana), *reversing award of damages for wrongful death*, 159 F.4 297, 306-08 (5th Cir. 2025); *Shallow Water Equip. L.L.C. v. Pontchartrain Partners, L.L.C.*, No. 21-949, 2022 WL

---

[85] ECF No. 138-1.

3755041, at * 13 (E.D. La. Aug. 30, 2022) (applying the Louisiana prejudgment interest rate "[g]iven that this Court sits in Louisiana, the parties sustaining (and causing) damage are domiciled in Louisiana, and the incident giving rise to this action occurred in Louisiana").

Unlike the section of Court in a different case which saw "no reason not to award prejudgment interest at the Louisiana . . . rate[,]" *Central Boat*, 744 F. Supp. 3d at 640-41, this Court sees reasons not to apply Louisiana's rate. Stolt's proposal that the Court apply Louisiana's prejudgment interest rate appears to be anchored only to this Court's location. Though it may not be unreasonable in the abstract for a district court in Louisiana to apply Louisiana's rate, doing so borders on arbitrary under the circumstances here, where Stolt and Harbor Dredging—both non-Louisiana entities—selected maritime law or Texas law to govern their relationship and contract for dredging occurring in Texas.[86] Accordingly, in its broad discretion in selecting the particular interest rate, the Court finds that either the federal statutory post-judgment interest rate, *see* 28 U.S.C. § 1961, or Texas's rate should apply here to these non-Louisiana entities where the crux of the parties' dispute relates to a maritime contract which itself selects maritime or Texas law to govern. *See generally Drinnon Marine, LLC v. Four Rivers Towing of Alabama, LLC*, 549 F. Supp. 3d 505, 518-19 (E.D. La. 2021) (Ashe, J.) (collecting cases informing district court discretion

---

[86] Article 20.1 of the MSA provides that "the legal relationship" between Stolt and Harbor Dredging "shall be construed in accordance with the United States general maritime law to the full extent possible, and solely to the extent that maritime law cannot be made applicable[,] the Parties intend and agree that the laws of the State of Texas shall govern without regard to conflicts-of-law principles that would require the application of any other law." ECF No. 41-1.

in selecting interest rate); *see also In re M/V Nicole Trahan*, 10 F.3d 1190, 1196-97 (5th Cir. 1994). Stolt shall have an opportunity to brief whether Texas or the federal post-judgment rate should apply and to provide a proposed default judgment proposing quantum based on the applicable rate assuming entry of default judgment within 10 days of submission.

## III.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Stolt's motion[87] for entry of judgment in its favor dismissing Harbor Dredging's claims with prejudice is **GRANTED**. A separate judgment shall follow entry of this Order and Reasons.

**IT IS FURTHER ORDERED** that Stolt's motion[88] for summary judgment is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Stolt's motion[89] for entry of default judgment against Harbor Dredging is **GRANTED.**  Stolt is entitled to a default judgment in its favor and against Harbor Dredging in the amount of $407,863.49 in compensatory damages. Additionally, Stolt is entitled to an award of prejudgment interest *with the proviso* that the quantum of prejudgment interest first shall be briefed by Stolt as follows.

**IT IS FURTHER ORDERED** that, not later than **March 11, 2026**, Stolt shall file its motion requesting leave to submit a proposed default judgment, along with a

---

[87] ECF No. 128.
[88] ECF No. 80.
[89] ECF No. 138.

memorandum briefing whether Texas or the federal rate should apply and the quantum of prejudgment interest to which Stolt is entitled under this governing rate, as well as its proposed default judgment.

**IT IS FURTHER ORDERED** that the March 3, 2026 pretrial conference and March 23, 2026 trial date and all related deadlines are **CANCELLED** and the pending motion[90] *in limine* is **DISMISSED AS MOOT**.

New Orleans, Louisiana, this 27th day of February, 2026.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[90] ECF No. 233.